IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DAMON LEE WOOD, §
(TDCJ Nos. 458906 and 590030) §
VS. § CIVIL ACTION NO.4:10-CV-826-Y
§
§
PARKER COUNTY, TEXAS, et al. §

OPINION and ORDER OF DISMISSAL UNDER 28 U.S.C. §
1915A(B)(1) and UNDER 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii)

This case is before the Court for review of pro-se inmate and plaintiff Damon Lee Wood's case under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B). Wood has named several defendants and seeks monetary damages for alleged violation of constitutional rights under 42 U.S.C. § 1983. (Compl.§ IV(b), attachment pages 4A-4B.) Wood has named as defendants Parker County, Texas. As well, he has named as individual defendants the present judge of a constitutional county court in Parker County, and three different persons who served as judge of County Court at Law Number One of Parker County. (Compl. § IV(B).)

A complaint filed in forma pauperis that lacks an arguable basis in law should be dismissed under 28 U.S.C. § 1915.[1] Under 28 U.S.C. § 1915(e)(2)(B), a district court retains broad discretion in determining at any time whether an in-forma-pauperis claim should be dismissed.[2] Furthermore, as a part of the PLRA, Congress enacted

---

[1]*Neitzke v. Williams*, 490 U.S. 319,328 (1989). Section 28 U.S.C. § 1915(e) *requires* dismissal not only when an allegation of poverty is untrue or the action is frivolous or malicious, but also when "the action . . . fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(A) and (B)(West 2006).

[2]*See* 28 U.S.C.A. § 1915(e)(2)(West 2006); *Adepegba v. Hammons,* 103 F.3d 383, 388 (5th Cir. 1996); *see also Wesson v. Oglesby,* 910 F.2d 278, 281 (5th Cir. 1990)(discussing authority to dismiss at any time under prior § 1915(d)).

28 U.S.C. § 1915A, which requires the Court to review a complaint from a prisoner seeking relief from a governmental entity or governmental officer or employee as soon as possible after docketing.[3] Consistent with § 1915A is prior case law recognizing that a district court is not required to await a responsive pleading to conduct its § 1915 inquiry.[4] Rather, § 1915 gives judges the power to "dismiss a claim based on an indisputably meritless legal theory."[5] After review of the complaint under these standards, the Court concludes that Wood's claims must be dismissed.

Both of Wood's parents died as result of a car accident in 1998. The executor of his mother's estate filed an application to probate her will in the constitutional county court of Parker County, Texas, in that same year. (Compl., attachment page 4A.) Wood's share of his mother's estate was "to be held in trust, until his death."[6] In 1999, that executor filed a petition for declaratory judgment concerning the trust fund held in Damon Wood's name, seeking to determine if distribution could be made from the trust, and if so, how and for whose benefit the distributions could be used. *See Wood,* 2009 WL 975997, at *1. Wood, through counsel, contested that petition, and due to the contested nature of the

---

[3] *See* 28 U.S.C.A. § 1915A(a)(West 2006).

[4] *See Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir. 1995).

[5] *Id., citing Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

[6] The underlying events made the basis of Wood's claims here were also at issue in Wood's appeal to the Second Court of Appeals of Texas. This court has consulted the opinion in learning the facts of this case. *Wood v. Boldt,* No. 2-08-171-CV, 2009 WL 975997, at *1 (Tex. App.-Fort Worth April 9, 2009, pet. denied)(mem op.). The Court takes judicial notice of that opinion. *See* Fed R. Evid. 201(c)(b).

proceedings, sought to transfer the proceedings to the county court at law. The constitutional county court thereafter transferred the case to the county court at law. (Compl., attachment page 4A.) The case was then pending in the county court at law for eight and a half years. (Compl., attachment page 4B; *see Wood,* 2009 WL 975997, at *1.) Wood contends that in 2004, he was forced into a settlement agreement, and that in March 2008, the county court at law allowed his counsel to withdraw, dismissed the contested proceeding, and transferred all further proceedings back to the constitutional county court. (Compl., attachment page 4B.)

As noted above, Wood appealed to the Second Court of Appeals the order of the county court at law dismissing the proceedings. The court of appeals ruled in an opinion that, although the constitutional county court properly transferred the contested probate matters to the county court at law, the county court at law did not have jurisdiction over matters involving a testamentary trust. *Wood,* 2009 WL 975997, at *3-4. The court of appeals held that although the parties "asked the county court at law to make determinations regarding Damon's trust [they] could not by agreement or by requests for relief confer jurisdiction on the county court at law over these trust matters." *Wood,* 2009 WL 975997, at *3. The court of appeals held that the county court at law did not have subject-matter jurisdiction to render orders related to the trust issues and thus vacated the portions of the county court at law's orders related to those issues. *Wood,* 2009 WL 975997, at *4.

3

Wood now alleges in this Court that the eight-and-a-half year proceedings in the county court at law violated his constitutional rights:

> Thus, the CCL over a period of eight and a half years, and spanding [sic] three separate judges over the same court and case violated Woods' constitutional right to : access to the courts (of COMPETENT Jurisdiction)-1st amended right; to DUE PROCESS OF LAW & DUE COURSE OF LAW under the 5th & 14th amended constitutional right; as well as violating Woods' right to be free from CRUEL & UNUSUAL PUNISHMENTS by the CCL IGNORING all of Woods letters & motions to the court, and by originally accepting transfer of the case into the CCL by the CCC knowing that the CCL never had nor held the subject matter jurisdiction to receive, hear or rule on any motion, petition, pleading or objection, or any other court filing concerning the CONTESTED TRUST ISSUES ! FURTHER, the CCC violated Woods' rights of DUE PROCESS & DUE COURSE OF LAW by originally transferring a case to a court that *it* knew held no subject matter jurisdiction over, but did so, so that the executor could plunder the estates of both James & Judy Wood, in violation of the probated wills of both. (Compl., attachment 4B.)

Wood seeks monetary damages, and to have "all other trust cases probated by these judges reopened and retried." (Compl. § VI.)

Wood has named as defendants four judges. In addition to the broad allegation against all defendants listed above, Wood makes a more specific allegation as to each: former County Court at Law Judge Graham Quisenberry is alleged to have "accepted and approved transfer of a trust matter knowing he did not hold the required jurisdiction," Constitutional County Court Judge Mark Riley is alleged to have "transferred a contested testamentary trust matter to a court that he knew did not hold the required subject matter jurisdiction," and former County Court at Law Judge Debra Dupont and present County Court at Law Judge Jerry Buckner are alleged to have

4

held on to a trust matter when they each knew there was no subject matter jurisdiction. (Compl. § IV(B).) Judges have absolutely immunity from claims for damages arising out of acts performed in the exercise of their judicial functions.[7] Absolute judicial immunity can be overcome only if the plaintiff shows that the complained-of actions were nonjudicial in nature or that the actions were taken in the complete absence of all jurisdiction.[8]

The actions of the complained-of judges in the instant case were taken in a judicial role. Judicial acts are those that are "normally performed by a judge" and affect parties who deal "with the judge in his judicial capacity."[9] Wood dealt with each of these judges in the proceedings pending before their respective courts. There actions were judicial in nature.

Wood argues that the defendant judges have waived their entitlement to absolute immunity. (Compl., attachment 4B.) Wood does not explain or support this claim with any specific facts. The Court, however, reads Wood's allegation broadly in his favor as a claim that because the court of appeals later determined that the county court at law lacked subject matter jurisdiction over the trust issues necessarily means the judges acted in the absence of all jurisdiction for immunity purposes. Although judicial immunity does not extend to acts committed "in the clear absence of all

---

[7]*Mireless v. Waco*, 502 U.S. 9, 11 (1991), *citing Forrester v. White*, 484 U.S. 219, 227-229 (1988) and *Stump v. Sparkman*, 435 U.S. 349, 360 (1978); *see also*, *Boyd v. Biggers,* 31 F.3d 279, 284 (5th Cir. 1994).

[8]*Mireless*, 502 U.S. at 11; *Boyd*, 31 F.3d at 284.

[9]*Id.,* (citing *Boyd,* 31 F.3d at 285.)

5

jurisdiction," the United States Court of Appeals for the Fifth Circuit held that even where a state appellate court has overturned a judicial decision on the basis of lack of subject-matter jurisdiction, the judicial officer was still entitled to absolute immunity:

> The Harrys argue that Judge Springer is not entitled to judicial immunity because she acted in "complete absence of all subject matter jurisdiction." They point to the Mississippi Court of Appeals decision, which held that she acted without subject matter jurisdiction. Despite the Harrys' arguments to the contrary, the Mississippi Court of Appeals' decision that Judge Springer acted without subject matter jurisdiction is not coterminous with the conclusion that she acted in "complete absence of all subject matter jurisdiction." If this were the case, each and every time a judge decided an issue where an appellate court later found subject matter jurisdiction lacking, that judge would have no judicial immunity. That proposition seems antithetical to the concerns underlying absolute judicial immunity, a doctrine meant to ensure that " 'a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' "[10]

As guided by the precedent of *Harry v. Lauderdale County*, the fact that the Second Court of Appeals of Texas later determined that the county court at law did not have subject-matter jurisdiction over the trust matters is not a determination that each judge of that court acted in the complete absence of jurisdiction for immunity purposes. Further, although Wood alleges each of the defendant judges took their actions "knowing" they did not have jurisdiction, such allegation does not change each judge's

---

[10]*Harry v. Lauderdale County, et al.,* 212 Fed. Appx. 344,347 2007 WL 27040 (5th Cir. Jan. 4, 2007)(quoting *Mireless,* 502 U.S. at 10(internal quotation omitted)).

6

entitlement to immunity because a judicial act "does not become lees judicial by virtue of an allegation of malice or corruption of motive."[11] Because the complained-of conduct by each defendant judge was judicial in nature and was undertaken pursuant to the jurisdiction provided to their respective courts, each of them is entitled to absolute immunity from any monetary damages claims.

In addition to his claims for monetary damages, Wood also seeks to "have all other trust cases probated by these judges reopened and re-tried." (Compl. § VI.) Under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction to review, modify, or nullify final orders of state courts.[12] The doctrine derives its name from two Supreme court cases decided sixty years apart. The first, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16 (1923) held that, by statute, jurisdiction over appeals from state court lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts. The second, *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486-87 (1983), held that this jurisdictional bar extends to particular claims "inextricably intertwined" with those a state court has already decided. The essence of the *Rooker-Feldman* doctrine is that a "party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the

---

[11]*Mireless,* 502 U.S. at 13 (quoting *Forrester,* 484 U.S. at 277.)

[12]*Liedtke v. State, Bar of Tex.,* 18 F.3d 315, 317 (5th Cir. 1994).

loser's federal rights."[13]

In this case, Wood's request to have this Court "reopen" and "re-try" the trust matters, is an effort to seek federal review of state probate matters. Because this federal-court action is "inextricably intertwined" with the state-court rulings, this Court, under the *Rooker-Feldman* doctrine, does not have subject-matter jurisdiction to consider the case.[14] Thus, Wood's remaining challenges to the state probate matters must be dismissed.[15]

In addition to naming four judges as defendants, Wood has also named as a defendant Parker County, Texas. Although a county is a "person" within the meaning of § 1983, it may not be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort."[16] The Supreme Court, in *Monell v.*

---

[13] *Johnson v. DeGrandy,* 512 U.S. 997, 1005-06 (1994); *see generally Crank v. Crank,* No..Civ. A. 3:96-CV-1984-D, 1997 WL 22815, at *2 (N.D.Tex. Jan. 14, 1987)(Fitzwater, J.)(stating that "[j]udicial errors committed in state court are for correction in state court systems, at the head of which stands the United States Supreme Court; such errors are no business of the lower federal courts")(quoting *Feldman,* 460 U.S. at 486.)

[14] *See Hale v. Harney,* 786 F.2d 688, 690-91 (5th Cir. 1986)

*(*A lengthy line of decision in our court, commencing with *Sawyer v. Overton,* 595 F.2d 252 (1979) and *Kimball v. the Florida Bar,* 632 F.2d 1283 (1980), holds that litigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits. Nor is the principle stated limited to actions, such as *Sawyer, supra,* which candidly seek review of the state court decree, it extends to others which "the constitutional claims presented [in federal court] are inextricably intertwined with the state court's" grant or denial of relief. *Feldman,* 460 U.S. at 482 n.16. In such a case, "the District Court is in essence being called upon to review the state court decision. This the District Court may not do." *Ibid.*)

[15] *See Freeman v. Texas,* No.H-08-2050, 2008 WL 4155346, at *3 (S.D.Tex. Sep. 2, 2008)(*Rooker-Feldman* doctrine deprives federal district court of jurisdiction to review Plaintiff's suit challenging state probate matters.)

[16] *Monell v. New York City Dept.of Social Services*, 436 U.S. 658, 691 (1978).

*New York City Department of Social Services,* emphasized that a local government entity cannot be held liable under § 1983 on a *respondeat superior* basis:

> [T]herefore . . . a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983.[17]

Thus, § 1983 liability attaches "only where the municipality *itself* causes the constitutional violation at issue."[18] Wood has not provided any factual allegations whatsoever of a policy or custom against Parker County, Texas. Thus, Plaintiff's claims against Parker County must be dismissed under 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Therefore, all Plaintiff's claims are DISMISSED WITH PREJUDICE under authority of 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

SIGNED April 19, 2011.

*[signature: Terry R. Means]*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[17] *Id.* at 694.

[18] *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)(emphasis in original).